IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| Valencia Colon,<br><br>Plaintiff,<br><br>v.<br><br>Richard Roundtree, et al.,<br><br>Defendant. | Civil Action File No.<br>1:21-cv-00149-JRH-BKE |

## Plaintiff's Statement of Facts and Controverted Facts in Response to Defendants' Motion for Partial Summary Judgment

Pursuant to Local Rule 56, Plaintiff responds to Defendants' Motion for Partial Summary Judgment as follows.

I. Controverted Facts[1]

1. Chrislynne Kuhlke did not testify on her own behalf as a fact witness; she testified as Augusta-Richmond County pursuant to Fed. R. Civ. P. 30(b)(6) on the topic of "Augusta-Richmond County Parks and Recreation Department policies and planning of events." **Notice of**

---

[1] For purposes of controverting facts, Plaintiff has used the same paragraph numbers used by Defendants in their motion. A numbered paragraph in this section refers to the paragraph of the same number in Defendans' motion.

**Deposition to Augusta-Richmond County** attached hereto as Exhibit A and **Kuhlke Deposition** 6:3-14 attached hereto as Exhibit B.

2.      Alzater Johnson did not testify on her own behalf as a fact witness; she testified as Augusta-Richmond County pursuant to Fed. R. Civ. P. 30(b)(6) on the topic of "Augusta-Richmond County Parks and Recreation Department policies and events at Julian Smith Casino." **Notice of Deposition to Augusta-Richmond County** attached hereto as Exhibit C and **Johnson Deposition** 5:15 – 6:1 attached hereto as Exhibit D.

5.      Prior to litigation Augusta-Richmond County provided Plaintiff's Counsel with all contracts for use of the Julian Smith Casino Property pursuant to an open records request. **Kuhlke Deposition** 26:19 – 27:4. In the documents produced, there was no written application for any event at the Julian Smith Casino on June 14, 2019. **Kuhlke Deposition** 27:5 – 13.

>      a.      During the Kuhlke Deposition, Augusta-Richmond County produced a document purporting to be the application and contract for use of Julian Smith Casino on June 14, 2019. **Kuhkle Deposition 20:12 – 18**. That

2

document was dated January 31, 2022. **Kuhlke Deposition 23:8 – 15**.

    b.    During the Kuhlke Deposition, after being questioned about the date on Exhibit D, Augusta-Richmond County produced a second document purporting to be the contract for use of the Julian Smith Casino on June 14, 2019. **Kuhlke Deposition 23:16 – 24:1**.

16 – 17.  Charlie Walker's testimony regarding Richmond County Sheriff's Office ("RCSO") policy is controverted by Captain Allan Rollins and the Richmond County Sheriff's Office Policy and Procedures Manual ("Manual"). Captain Allan Rollins testified as Augusta-Richmond County pursuant to Fed. R. Civ. P. 30(b)(6) on the topic of "Augusta-Richmond County Sheriff's Department Office Policies and Practices related to Professional Standards and Training." See **Notice of Deposition to Augusta-Richmond County** attached hereto as Exhibit E and **Rollins Deposition 6:5-9** attached hereto as Exhibit F. A copy of the **Manual** is attached hereto as Exhibit G

a. RCSO policy requires deputies to get approval for "all special[s]" from a designated Sergeant. **Rollins Deposition 36:1-21**.

b. No deputy is permitted to work a special duty assignment without approval from the designated Sergeant. **Rollins Deposition 36:19-21**.

c. The purpose of the approval process is so RCSO knows when Deputies are working special events so they can have them on a radio with dispatch – so RCSO knows where Deputies are. **Rollins Deposition 66:1 – 67:20**.

d. The Manual sets out department policy. **Rollins Deposition 17:1-4**.

e. The Manual requires all requests for special duty to be forwarded to the "Special Duty Assignment Sergeant" for review and approval. Prior to working special duty assignments, Deputies must receive "written approval." See **Manual, Policy 3.5-4 and 3.7-1 (3.11: Secondary Employment, Lapse, and Special Duty)**.

        f.    "Special Duty" is defined as "The holding of a second job which entails the duties of a certified officer but is not a part of or paid by the Richmond County Sheriffs Office." **Manual, Policy 3.7-1**.

II.    <u>Statement of Material Facts Precluding Summary Judgment</u>

1.    On June 14, 2019, Plaintiff attended a private party held at the Julian Smith Casino, an Augusta-Richmond County recreational facility. **Colon Deposition 46:15 – 17** attached hereto as Exhibit H.

2.    Walker was working Special Duty at the event as a uniformed Augusta-Richmond County Sheriff's Deputy. **Walker Deposition 45:17 – 47:4** attached hereto as Exhibit I.

3.    During the event he patrolled the parking lot and the Julian Smith Casino in his uniform using a Richmond County Sheriff's patrol car. **Id.** During the event, he spoke with Plaintiff. **Id. at 53:2 – 54:4**.

4.    When Plaintiff left the event. Walker followed her in his patrol car. **Id. 55:5 – 13** and **Colon Deposition 58:11 – 16.**

5.    Plaintiff was not completely familiar with the area and realized she had turned the wrong way, she turned on a side road to put her

address in the mapping program on her phone. **Colon Deposition 62:21 – 23.**

6. When Plaintiff pulled over onto the side road, Walker pulled up to the left side of her car in the patrol car asked Plaintiff to roll down her window. **Colon Deposition 70:5 – 72:20.**

7. Walker recognized Plaintiff from the event, told her that he smelled alcohol on her. **Id. 72:8 – 12** and **Walker Deposition 57:13 – 15.**

8. Walker told Plaintiff to move her car and follow him to another location so as not to disturb any residents in the area. **Colon Deposition 74:18 – 76:17**.

9. Plaintiff told Walker she wanted to go home. **Id. at 76:9 – 10**.

10. Because Walker was a uniformed officer, Plaintiff agreed and followed. **Id. at 76:11 – 17**.

11. Plaintiff followed Walker onto another side road where he stopped. **Id. at 77:8 – 19** and **Walker Deposition 57:25 – 58:2**.

12. While stopped on the side road,

    A. Walker got out of his patrol car and walked to Plaintiff's window. **Colon Deposition 77:17 – 18**.

6

    B.    Walker asked Plaintiff for her phone number. **Id. at 77:19**.

    C.    Walker asked Plaintiff to get out of the car. **Id. at 82:18 – 19**.

    D.    Walker made sexual propositions to Plaintiff. **Id. at 83:9 – 12**.

    E.    Plaintiff repeatedly said she wanted to go home; Walker responded that he smelled alcohol on Plaintiff. **Id. at 83:9 – 22**.

    F.    Plaintiff became scared for her safety and attempted to play on Walker's sympathies by telling him about her daughter's rape and that she was not sexually active. **Id. at 84:23 – 85:23.**

13.    After stopping on the side road, Walker ordered Plaintiff to follow him for a second time. **Colon Deposition 97:3 – 5**.

14.    Plaintiff complied because Walker was a uniformed police officer with a patrol car and a gun and she was scared. **Id. at 97:6 – 98:6**.

15.    Plaintiff believed if she did not comply with Walker's orders, he would charge her with a DUI. **Id. at 100:2 – 14.**

16. Walker drove to Eisenhower Park, and Plaintiff followed in her car. **Walker Deposition 66:7 – 15**.

17. Once at Eisenhower Park, Walker got out of his patrol car and told Plaintiff he wanted to have sex with her, she said "no", he began walking around and screaming at Plaintiff, and got into the passenger side of Plaintiff's car. **Colon Deposition 101:19 – 25**.

18. Once in Plaintiff's car, Walker began touching Plaintiff, she told him to get out of her car, and Walker got out of her car. **Id. at 102:2 – 4**.

19. Walker repeatedly told Plaintiff he smelled alcohol on her and that sex would not hurt her. **Id. at 105:12 – 22**.

20. Walker put on a condom and raped Plaintiff in the driver's seat of her car. **Id. at 108:1 – 109:15**.

21. Walker claims the sex was consensual. **Walker Deposition 69:24 – 70:1**.

22. Walker did not make any request to work the June 14, 2019 event at Julian Smith Casino and there was no written approval for him to be there. **Lee Deposition 37:2 – 17** and **38:5 – 9** attached hereto as Exhibit L <u>and</u> **March 9, 2020 Letter from Kimberly Lee to Plaintiff's Counsel**

8

**regarding Walker Special Duty Assignments in 2019** attached hereto as Exhibit M.

23. The Sheriff is aware that Deputies accept and carry out Special Duty without proper approval. **Rollins Deposition 67:24 – 68:2**.

24. Internal Affairs is the branch of the RCSO that conducts investigations into violations of RCSO policies. **Lee Deposition 8:10 – 16.**

25. The Sheriff is the ultimate arbiter of all Internal Affairs investigations. **Lee Deposition 15:4 – 20**.

26. Internal Affairs does not investigate violations of the RCSO Special Duty policy. **Rollins Deposition 66:1 – 7**.

27. The Sheriff, Richard Roundtree, sets policy for the RCSO and decides when to make changes to the Manual. **Id. at 83:10 – 84:25**.

28. The Georgia Peace Officer Standards and Training Counsel (P.O.S.T.) sets training standards and licenses law enforcement officers in the State of Georgia. **Id. at 11:1 – 9**.

29. Unless an officer self-reports a violation, P.O.S.T. investigates the licensing of law enforcement officers only when they are terminated or demoted. **Lee Deposition 27:9 – 16**.

30. Charlie Walker violated the RCSO Body Worn Camera Policy and was investigated by Internal Affairs three times prior to June 14, 2019. **Charlie Walker Internal Affairs File, p. 2** attached hereto as Exhibit N.

   A. For a May 2016 violation, Deputy Walker received a written reprimand. **Id.**

   B. For a November 2016 violation, Deputy Walker received a one day suspension. **Id.**

   C. For the third violation on February 2017, Walker received a seven-day suspension, one year of probation, was required to write a paper, and was forced to pay restitution to his victim for causing the loss of a bicycle and a cellphone. **Id.**

   D. Five days of the suspension was for use of force, two days were for turning off (and instructing the other deputy to turn off) the body camera. Notably, one captain disagreed with the punishment and recommended termination. **Id. at p. 4.**

   E. The third violation involved a use of force wherein Walker beat a man with a baton after the man was tazed by another deputy. After the beating, the deputies, took the man to a neighborhood leaving the man's bicycle and cell phone

behind. They dumped the beaten and tazed man miles from his home without the ability to travel or call anyone for assistance. **Id. at p. 3**.[2] Charlie Walker specifically chose the neighborhood to dump the man in "because it was empty." **Walker Deposition 85:24**.

35. Charlie Walker is still employed with RCSO and received a ten-day suspension, a year of probation, no special duty assignments until the close of an associated criminal investigation, and a class on ethics and professionalism. **Lee Deposition 21:5 – 7**.

Dated: July 12, 2022.

                                                               THE CAUTHORN FIRM

                                                               */s/J. Wickliffe Cauthorn*
                                                               J. Wickliffe Cauthorn
                                                                Georgia Bar No. 907911

---

[2] There is a YouTube video of this encounter, and Walker is seen turning off his body camera just as he begins speaking with another deputy about what to do with the man they've beaten and tazed. See, https://www.youtube.com/watch?v=FLSvmhSXoEU

wick@thecauthornfirm.com
1984 Howell Mill Road
PO Box 20059
Atlanta, Georgia 30325
(404) 991-2700
Fax: (404) 902-5609
*Counsel for Plaintiff*

Certificate of Service

The undersigned certifies a copy of the foregoing was served upon counsel of record via this Court's electronic case filing (ECF) system. Attorneys of record are

Tameka Haynes
Randolph Frails
Frails & Wilson LLC
211 Pleasant Home Road, Suite A1
Augusta, GA 30907
randyfrails@frailswilsonlaw.com
thaynes@frailswilsonlaw.com

July 12, 2022.

                                            THE CAUTHORN FIRM

                                            */s/J. Wickliffe Cauthorn*
                                            J. Wickliffe Cauthorn
                                            Georgia Bar No. 907911

wick@thecauthornfirm.com
1984 Howell Mill Road
PO Box 20059
Atlanta, Georgia 30325
(404) 991-2700
Fax: (404) 902-5609
*Counsel for Plaintiff*