IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

VALENCIA COLON,                     *
                                    *
        Plaintiff,                  *
                                    *
        v.                          *        CV 121-149
                                    *
RICHARD ROUNDTREE, et al.,          *
                                    *
        Defendants.                 *

_____

O R D E R
_____

Plaintiff Valencia Colon brings various claims against Defendants for injuries she sustained in June of 2019. (See Doc. 1-1.) Defendants move for partial summary judgment. (Doc. 22.) For the following reasons, Defendants' motion is **GRANTED.**

## I. BACKGROUND

On June 14, 2019, Plaintiff attended a private event at Julian Smith Casino, which is an Augusta-Richmond County recreational facility. (Doc. 22-1, at 1; Doc. 28, at 5.) The event was "bring your own bottle," so the hosts were not required to obtain an alcohol license. (Doc. 22-1, at 2.) If alcohol is present during an event at Julian Smith Casino, the city of Augusta, Georgia, requires that a Richmond County Sheriff's Office ("RCSO") deputy be present. (Id. at 3.) RCSO deputies working these types of events are on "special duty," and on the night in question, RCSO

Deputy Charlie Walker ("Deputy Walker") was working the event on a special duty assignment. (Id. at 2-3.)

Plaintiff attended the event on June 14, 2019. (Doc. 28, at 5.) The parties highly dispute what occurred after Plaintiff left the event that night; therefore, the Court first recites Plaintiff's version of the events and then Deputy Walker's version of the events.

According to Plaintiff, she left the event and Deputy Walker followed her in his patrol car. (Id.) Plaintiff was unfamiliar with the area she was in, so she pulled over to put her address in a mapping program on her cellphone. (Id. at 5-6.) When she pulled over, Deputy Walker pulled up next to her vehicle, asked Plaintiff to roll down her window, and told Plaintiff he smelled alcohol on her. (Id. at 6; Deposition of Valencia Colon ("Colon Dep."), Doc. 28-9, at 19.) Deputy Walker recognized Plaintiff from the event. (Doc. 28, at 6.) Deputy Walker then instructed Plaintiff to follow him in her vehicle so as not to disturb any residents in the area, which she did. (Id. at 7.) Once they pulled over, Deputy Walker got out of his car, walked over to Plaintiff's window, and conversation ensued. (Id. at 8.) He then got back into his car and once again told her to follow him. (Id. at 9.) She complied. (Id.) Plaintiff believed that if she did not comply with Deputy Walker's orders, he would charge her with a DUI. (Id.) When they stopped again, Plaintiff alleges Deputy Walker got out of his

2

patrol car, told Plaintiff he wanted to have sex with her, to which she responded "no," and then got into Plaintiff's vehicle and began touching her. (Id.)  Plaintiff told him to get out of her vehicle, which he did.  (Id. at 9.)  Plaintiff alleges Deputy Walker kept telling Plaintiff he smelled alcohol on her and then he raped her. (Id. at 10.)

According to Deputy Walker, he left the event and noticed a black SUV in front of him and the driver appeared to be lost. (Deposition of Deputy Walker ("Walker Dep."), Doc. 22-15, at 56-57.)  He pulled alongside the black SUV, and recognized the driver, Plaintiff, from the event.  (Id. at 57.)  They started talking, and Deputy Walker alleges Plaintiff got out of her vehicle, gave him a hug, and at that point he told her she smelled like alcohol. (Id. at 58.)  He alleges they "agreed to continue the conversation," so they got back into their vehicles, and Plaintiff followed Deputy Walker to a different location.  (Id. at 58-59.) At this point, Deputy Walker got out of his patrol car, got into Plaintiff's vehicle, and conversation ensued.  (Id. at 59.)  There were people around, so they agreed to drive to a park nearby because it was more private.  (Id. at 66.)  Deputy Walker drove to the nearby park, and Plaintiff followed.  (Id. at 67.)  Once they parked their vehicles, Plaintiff and Deputy Walker then got out of their vehicles and continued to talk.  (Id. at 68.)  Deputy Walker alleges they then got into Plaintiff's vehicle and had sexual

intercourse, which Deputy Walker says was consensual. (Id. 69-71.)

Plaintiff filed this action in the Superior Court of Richmond County, and Defendants subsequently removed the action to this Court. (Doc. 1.) Defendants filed this motion for partial summary judgment on June 17, 2022 (Doc. 22), to which Plaintiff responded (Doc. 28), and Defendants replied (Doc. 31). This motion is now ripe for the Court's review.

## II. LEGAL STANDARDS

Defendants move for partial summary judgment under Federal Rule of Civil Procedure 56(a). (See Doc. 22-2.)

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 587, and must draw "all justifiable inferences in [her] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal quotation marks and citation omitted).

The moving party has the initial burden of showing the Court,

by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case, or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp., 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor her response to the method by which the movant carried her initial burden. If the

5

movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116.  If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17.  The non-movant cannot carry her burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).  Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk gave Plaintiff appropriate notice of the motion for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default.  (Doc. 23.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.  The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. DISCUSSION

Plaintiff brings various claims against Defendants alleging violations of state and federal law and seeks an award of attorney's fees and expenses and punitive damages. (See Doc. 1-1.) Defendants move for summary judgment on all claims except those against Deputy Walker in his individual capacity, asserting various arguments: (1) Plaintiff's claims against John Does 1-5 and ABC Corp. 1-5 constitute improper fictitious party pleading; (2) Plaintiff fails to state a federal claim against Augusta, Georgia and any of its employees or officials; (3) Plaintiff fails to establish a Section 1983 claim against Sheriff Roundtree; (4) Plaintiff fails to establish an official capacity claim against Deputy Walker; (5) Plaintiff fails to establish a violation of the Eighth Amendment; (6) Plaintiff fails to establish a state law claim against any employees or officials of Augusta, Georgia; and (7) Plaintiff fails to establish any state law claim against Sheriff Roundtree. (See Doc. 22-2, at 2-13.) Before evaluating the motion for summary judgment, the Court must address two preliminary matters.

First, in Response to Defendants' motion, Plaintiff concedes several of her claims lack merit. (See Doc. 28, at 15-16 n.4-5.) Plaintiff states that summary judgment is appropriate "against the individual county Defendants" on Counts I and III of her Complaint, and summary judgment is appropriate on Count II of her Complaint.

(Id.)   However, she asserts that Defendants' motion should be denied as to Deputy Walker and Sheriff Roundtree.   (Id. at 15.) Based on Plaintiff's concessions, Defendants' motion for summary judgment on Counts I, II, and III of Plaintiff's Complaint is GRANTED.[1]

Second, it is unclear from the Complaint whether Plaintiff is suing Sheriff Roundtree and Deputy Walker in their individual or official capacities, so the Court looks to the course of the proceedings to determine in which capacity they are sued.   See Crider v. Williams, No. 21-13797, 2022 WL 3867541, at *4 (11th Cir. Aug. 30, 2022) (quoting Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1047 (11th Cir. 2008)) ("We have explained that '[w]hen it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed.'"). The Court finds that Count III of Plaintiff's Complaint is a Section 1983 claim against Sheriff Roundtree and Deputy Walker in their official capacities because this claim is against an entity,[2]

---

[1] As for Counts I and III, the Court is uncertain if Plaintiff concedes that the entirety of these claims are meritless, or if the claims are meritless as to all Defendants except Sheriff Roundtree and Deputy Walker. (See Doc. 28, at 15.) In any event, as discussed below, Plaintiff fails to respond to Defendants' motion for summary judgment on these claims, so Defendants are nonetheless entitled to summary judgment. (See discussion infra Sections III.A.1, III.B.)

[2] Plaintiff brings Count III against "Augusta-Richmond County." (Doc. 1-1, at 10.) The Court notes that in Georgia, a sheriff and deputy sheriffs are "arms of the state," and therefore, the proper defendant in an official capacity claim against Sheriff Roundtree and Deputy Walker would be the state of Georgia, not the county. See Scott v. Roundtree, No. CV 120-159, 2021 WL 6009752, at *9 n.3 (S.D. Ga. Dec. 20, 2021). The Court need not evaluate the claim as such because

Count IV is a Section 1983 claim against Sheriff Roundtree in his individual capacity, and Count V is a Section 1983 claim against Deputy Walker in his individual capacity.[3]  See M.R. v. Bd. of Sch. Comm'rs of Mobile Cnty., No. 11-0245-WS-C, 2012 WL 2931263, at *2 (S.D. Ala. July 18, 2012) (quoting Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991)) ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent.").   This appears to be Defendants' understanding as well because in their motion for summary judgment on Count III, Defendants state, "it is assumed that Plaintiff only intends to make official capacity claims, which will be analyzed as claims against Augusta, Georgia." (Doc. 22-2, at 3.)

Accordingly, the Court will address Defendants' motion for summary judgment on Count III, a Section 1983 claim against Defendants Sheriff Roundtree and Deputy Walker in their official capacities, Count IV, a Section 1983 claim against Sheriff Roundtree in his individual capacity, and Plaintiff's Eighth Amendment claims.

---

Plaintiff abandoned her official capacity claims.   (See discussion infra Sections III.A.1, III.B.)

[3] Count V of the Complaint is titled "Claims Against Sheriff Richard Roundtree Pursuant to 42 U.S.C. § 1983." (Doc. 1-1, at 16.)  However, the Court believes Plaintiff intended for this Count to be against Deputy Walker as the title is duplicative of Count IV, and in Count V, she alleges "Charlie T. Walker is liable to Plaintiff pursuant to 42 U.S.C. § 1983 for the aforementioned Constitutional violations.  He is liable to Plaintiff for all damages caused by the rape." (Doc. 1-1, at 12, 16.)

**A. Claims Against Sheriff Roundtree (Counts III and IV)**

Defendants move for summary judgment on all claims against Sheriff Roundtree.  (See Doc. 22-2, at 3-8.)  The Court addresses Defendants' arguments below.

1. Official Capacity Claim (Count III)

Defendants move for summary judgment on the Section 1983 claim against Sheriff Roundtree in his official capacity, to the extent any claim remains.  (See id. at 3-6; supra n.1-2.)  Defendants move for summary judgment on this claim because, they argue, Sheriff Roundtree was acting under state authority during Plaintiff's allegations, and not under the control of Augusta, Georgia, because "in Georgia, sheriff's offices are separate and independent from the county."  (Doc. 22-2, at 5 (citing Ga. Const. art. IX, § I, ¶ III; art. IX, § II, ¶ 1(c)(1); Grech v. Clayton Cnty, 335 F.3d 1326, 1333 (11th Cir. 2003)).)  Plaintiff did not respond to this argument in her brief in opposition; instead, she only responded to the individual capacity claim against Sheriff Roundtree.  (See Doc. 28, at 16-21.)  As such, the Court finds Plaintiff has abandoned her official capacity claim against Sheriff Roundtree.  See Scott, 2021 WL 6009752, at *5 (quoting Johns v. CSX Transp., Inc., 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016)) ("When a non-moving party fails to address particular claims in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons these claims.").

2. Individual Capacity Claim (Count IV)

Plaintiff also brings a Section 1983 claim against Sheriff Roundtree in his individual capacity for alleged violations of her Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (Doc. 1-1, at 12-16.) Defendants move for summary judgment on this claim, arguing Plaintiff fails to establish a Section 1983 claim against Sheriff Roundtree because he was sued in his supervisory authority and Plaintiff has not met the burden of showing supervisor liability. (Doc. 22-2, at 6-8.)

Typically, "supervisory officials are not[ ]liable under [Section] 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted). To impose supervisory liability for Section 1983 violations, a plaintiff must allege either (1) "the supervisor personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Plaintiff does not allege Sheriff Roundtree personally participated in the alleged events, so the Court must determine whether there is a causal connection between Sheriff Roundtree's actions and

11

Plaintiff's alleged constitutional deprivations.   (See generally Doc. 1-1; Colon Dep., at 14-15.)

To establish a causal connection, Plaintiff must allege: (1) "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged [constitutional] deprivation, and he fail[ed] to do so," (2) "a supervisor's custom or policy . . . result[ed] in deliberate indifference to constitutional rights," or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."   Cottone, 326 F.3d at 1360 (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003) (internal quotation marks omitted)).   "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."   Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).   "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360-61 (quoting Gonzalez, 325 F.3d at 1234). Here, Defendants argue that Plaintiff fails to establish the necessary causal connection and therefore cannot establish supervisor liability.   (Doc. 22-2, at 6-8.)   The Court addresses

each of the three ways Plaintiff can establish a causal connection below.

> a. *History of widespread abuse that put the responsible supervisor on notice of unconstitutional conduct*

First, Plaintiff argues Sheriff Roundtree was on notice because of either: (1) the alleged rape of a prisoner by another Augusta-Richmond County deputy, former deputy Kendrick Quick; or (2) Deputy Walker's previous RCSO policy violations. (Doc. 1-1, at 13.) Defendants argue neither allegation put Sheriff Roundtree on notice. (Doc. 22-2, at 6-8.)

As for the alleged rape of a prisoner by former Deputy Quick, Defendants point out that the RCSO was first contacted by Deputy Quick's alleged rape victim on January 21, 2020, whereas the incident at issue here took place on June 14, 2019. (Id. at 8.) The Court finds Sheriff Roundtree could not have been on notice of the need to correct constitutional deprivations by way of an incident that occurred after the incident at issue.

As for Deputy Walker's previous RCSO policy violations, Defendants argue Plaintiff cannot provide evidence that Sheriff Roundtree failed to correct abuses by Deputy Walker because Deputy Walker's prior violations were related to the body worn camera policy, and he was disciplined for those incidents.[4] (Id. at 6-7.) The Court agrees.

---

[4] Plaintiff's response indicates that Deputy Walker violated the body worn camera policy three times and the use of force policy once. (Doc. 28, at 19.)

The employee records submitted by Plaintiff show Deputy Walker violated RCSO policy several times, but, importantly, the employee records show Deputy Walker was disciplined for these violations. (See Doc. 28, at 12-13; Doc. 28-15, at 2-20.) He violated RCSO policy in May 2016 and received a written warning; he violated RCSO policy in November 2016 and received a one-day suspension; and he violated RCSO policy in February 2017, and was suspended for seven days, put on probation for one year, required to write a research paper, and ordered to pay restitution to the victim. (See Doc. 28, at 12-13.) These prior policy violations do not show "a history of widespread abuse" because Deputy Walker was disciplined for each violation. See Gray v. Royal, 181 F.Supp. 3d 1238, 1250 (S.D. Ga. 2016) (finding that plaintiffs did not proffer sufficient evidence to establish a history of widespread abuse when the defendant was disciplined for the prior incidents plaintiff relied upon). Furthermore, Plaintiff does not allege that any of the previous violations by Deputy Walker involved sexual misconduct, and therefore, these previous violations would not have put Sheriff Roundtree on notice of Deputy Walker's proclivity for sexual misconduct.[5] See Christmas v. Harris Cnty.,

_____

Deputy Walker's employment records submitted by Defendants indicate that Deputy Walker violated the body worn camera policy three times, but not the use of force policy. (See Doc. 22-5.) Plaintiff submitted more detailed employment records, which indicate Deputy Walker violated the use of force reporting policy. (See Doc. 28-15, at 3.) Regardless, the Court's analysis is the same.
[5] Nor would the previous violations have put Sheriff Roundtree on notice of Deputy Walker's proclivity to commit violence. Plaintiff categorizes Deputy Walker's actions as both a "violent attack" and a "violent sexual attack" and

14

51 F.4th 1348, 1356 (11th Cir. 2022) (finding the sheriff, as supervisor, was not on notice when two prior incidents involving the deputy sheriff were "of such a different character from the constitutional violation at hand").   As such, Sheriff Roundtree cannot be said to have been  on notice of unconstitutional conduct.

> b.   *Supervisor's custom or policy that resulted in deliberate indifference to constitutional rights*

In her Complaint, Plaintiff alleges Sheriff Roundtree adopted the following: (1) a policy where "Deputies accused of use-of-force violations are investigated and punished in a way so as to avoid P.O.S.T. scrutiny"; (2) a policy where "events are allowed at public property without appropriate approval and permitting by the Sheriff's Department"; (3) a policy where "Deputies are promoted while actively serving suspensions and punishment for violations"; and (4) a custom of ignoring and failing to enforce violations of the RCSO policy regarding special duty assignments.[6] (Doc. 1-1, at 9, 13.)   Defendants argue these policies and customs

---

asserts this was his "fourth violent attack on a person," with the three previous times being, "beating a drunk man, ditching him, and stealing his bicycle." (See Doc. 1-1, at 14.)   Plaintiff appears to be referring to the February 2017 incident by this allegation, where Deputy Walker was investigated for his response to a call involving a disorderly subject.  (Doc. 28-15, at 3.)   RCSO investigated and found Deputy Walker's use of force was justified, but he failed to complete a Use of Force Report, which was required by policy.  (Id.)   He also violated the Body Worn Camera Policy.  (Id.)   There was no finding that Deputy Walker used excessive force, as Plaintiff seems to argue.

[6] In her Complaint, Plaintiff asserts "[p]er Sheriff's Policy, all 'special duty' requires prior approval, and "the Sheriff violated its own policy with regard to performing security at private events."  (Doc. 1-1, at 9.)   Plaintiff later states it is "Sheriff Roundtree's 'custom' [] to ignore and fail to enforce his own policy regarding prior approval of special duty."  (Doc. 28, at 18.)

cannot establish the necessary causal connection to establish supervisor liability.[7]  (Doc. 22-2, at 6-8, 11-13.)  In response, Plaintiff only addresses the RCSO policy as to special duty assignments, so the Court finds Plaintiff abandoned her other arguments.  See Scott, 2021 WL 6009752, at *5.

The Parties do not dispute RCSO deputies that work events at Julian Smith Casino are working special duty assignments, and that on the night in question, Deputy Walker was working a special duty assignment.  (Doc. 22-1, at 2-3; Doc. 28, at 5.)  The Parties dispute, however, whether Deputy Walker was required to get approval to work this special duty assignment.  (Doc. 22-1, at 3; Doc. 28, at 4.)  Defendants argue that certain special duty assignments do not require prior approval or involvement from the RCSO supervisor, and deputies can communicate amongst themselves to fill in and work other deputies' special assignments, which is what Deputy Walker did on the night in question.  (Doc. 22-1, at 3.)  In support of their argument, Defendants cite Deputy Walker's deposition testimony.  (Id.)  Conversely, Plaintiff argues prior approval from a designated Sergeant is required for all special duty assignments, and Deputy Walker did not receive the proper

---

[7] In their motion for partial summary judgment, Defendants address the RCSO special duty policy in their discussion of the state law claims against Sheriff Roundtree, which is where the allegation appears in Plaintiff's Complaint.  (See Doc. 1-1, at 9; Doc. 22-2, at 11-13.)  In Plaintiff's response, she discusses the alleged violation of RCSO policy as to special duty assignments as a basis for her Section 1983 claims against Sheriff Roundtree.  (See Doc. 28, at 17-19.)  The Court addresses the RCSO special duty policy in its discussion of Plaintiff's Section 1983 claim out of an abundance of caution.

approval on the night in question.   (Doc. 28, at 3-4, 10.)   In

support, Plaintiff cites the RCSO's Policy and Procedures Manual,

the testimony of Captain Allan Rollins, and the testimony of Deputy

Walker.   (Id.)   Plaintiff asserts Sheriff Roundtree "had a custom

of ignoring rampant violations of his own special duty policy and

that he knew there were widespread violations within the RCSO and

showed willful indifference to those violations."   (Id. at 19.)

The Court finds the Parties' dispute over the special duty

assignment process and whether Deputy Walker received proper

approval is immaterial because, to establish a causal connection,

"[t]he unconstitutional act [ ] must have been carried out

'pursuant to' the alleged policy or custom."   Christmas, 51 F.4th

at 1356 (quoting Henley v. Payne, 945 F.3d 1320, 1331 (11th Cir.

2019) ("[Plaintiff's] [Section] 1983 claim against [the sheriff]

fails because he has not alleged that [the deputy] carried out the

purportedly unconstitutional arrest pursuant to a policy or custom

of the [Sheriff's Office].").   Here, any connection between Sheriff

Roundtree's alleged custom of ignoring and failing to enforce

violations of the RCSO policy regarding special duty assignments,

whether it existed or not, and the sexual assault of Plaintiff is

far too attenuated — Plaintiff was not raped pursuant to this

custom.   Based on this finding, Plaintiff has not shown a custom

or policy sufficient to establish supervisor liability.

> c. *Supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so*

Plaintiff does not attempt to establish a causal connection by arguing Sheriff Roundtree directed Deputy Walker to act or knew he would act unlawfully and failed to stop him.  Therefore, Plaintiff also fails to establish supervisor liability through this avenue. Based on this, the Court **GRANTS** Defendants' motion for summary judgment as to Sheriff Roundtree's liability in his individual capacity under 42 U.S.C. § 1983.

## B. Official Capacity Claim Against Deputy Walker (Count III)

Next, Defendants move to dismiss Plaintiff's official capacity claim against Deputy Walker because an official capacity claim against Deputy Walker is duplicative of the claim against Sheriff Roundtree.  (Doc. 22-2, at 8.)  Plaintiff does not respond directly to Defendants' arguments, instead, she cites the rules for liability under Section 1983, specifically when an actor is acting "under color of law" regarding acts of sexual assault.  (See Doc. 28, at 16-23.)

The Court agrees with Defendants.  "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent."  Busby, 931 F.2d at 776 (footnote, citations, and internal quotations omitted).  Plaintiff's claims against Sheriff Roundtree and Deputy Walker in their official

capacities are redundant.  Therefore, the Court **GRANTS** Defendants'
motion for summary judgment as to the official capacity claims
against Deputy Walker.

## C. Plaintiff's Eighth Amendment Claim

Lastly, Plaintiff alleges her Eighth Amendment right "to
freedom from unreasonable search and seizure, and cruel and unusual
punishment" was violated.[8]  (Doc. 1-1, at 11, 15, 16.)  Defendants
argue "Plaintiff had not alleged that she was a convicted inmate
at the time of her allegations," so she cannot establish a Section
1983 claim based on the Eighth Amendment.   (Doc. 22-2, at 9.)
Plaintiff does not respond to this argument; therefore, her Eighth
Amendment claim has been abandoned and Defendants are entitled to
summary judgment on this claim.  See Scott, 2021 WL 6009752, at
*5.


## IV. CONCLUSION

For  the  foregoing  reasons,  **IT  IS  HEREBY  ORDERED**  that
Defendants'  motion  for  partial  summary  judgment  (Doc.  22)  is
**GRANTED** as to Counts I, II, III, IV, and on Plaintiff's Eighth
Amendment Claims.   The following claims remain: Count V against
Deputy Walker in his individual capacity based on the violation of
Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights; Count

---

[8] Plaintiff alleges an Eighth Amendment violation as a basis for each of her
Section 1983 claims, but as discussed in this Order, the only remaining Section
1983 claim is Count V against Deputy Walker in his individual capacity.

VI; Count VII; Count VIII; Count IX; and Count X.   (See Doc. 1-1.)
The Clerk is **DIRECTED** to **TERMINATE** all Defendants except Deputy
Walker from this case.   The case **SHALL** proceed to trial in due
course.

　　　　**ORDER ENTERED** at Augusta, Georgia, this ___10th___ day of March,
2023.

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　J. RANDAL HALL, CHIEF JUDGE
　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT
　　　　　　　　　　　　　　　　　　　　　　　　　SOUTHERN DISTRICT OF GEORGIA